# Exhibit A

Trials@uspto.gov                                        Paper 9
571-272-7822                                            Entered: November 29, 2013


UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

OPENTV, INC.
Petitioner

v.

CISCO SYSTEMS, INC.
Patent Owner
_____

Case IPR2013-00330
Patent 7,505,592 B2


Before KALYAN K. DESHPANDE, JUSTIN T. ARBES, and
PATRICK M. BOUCHER, *Administrative Patent Judges.*

ARBES, *Administrative Patent Judge.*


DECISION
Denying Institution of *Inter Partes* Review
*37 C.F.R. § 42.108*

Case IPR2013-00330
Patent 7,505,592 B2

OpenTV, Inc. filed a Petition ("Pet.") to institute an *inter partes* review of claims 1-20 of U.S. Patent No. 7,505,592 B2 (Ex. 1001, "the '592 patent") pursuant to 35 U.S.C. § 311 *et seq.*  Patent Owner Cisco Systems, Inc. filed a preliminary response ("Prelim. Resp.") to the Petition.  We have jurisdiction under 35 U.S.C. § 314.  For the reasons that follow, the Board has determined not to institute an *inter partes* review.

## I. BACKGROUND

The standard for instituting an *inter partes* review is set forth in 35 U.S.C. § 314(a):

> THRESHOLD—The Director may not authorize an inter partes review to be instituted unless the Director determines that the information presented in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition.

Petitioner challenges claims 1-4, 6-10, 12-15, and 17-20 as anticipated under 35 U.S.C. § 102 and claims 2-6, 8-11, and 13-16 as unpatentable under 35 U.S.C. § 103(a).  Pet. 16-60.  We deny the Petition as discussed below.

### A. The '592 Patent (Ex. 1001)

The '592 patent, titled "Apparatus for Entitling and Transmitting Service Instances to Remote Client Devices," issued on March 17, 2009, based on Application No. 11/671,506, filed February 6, 2007.  The '592 patent is a child of a series of applications (continuations and continuations-in-part) ultimately descending from Application No. 10/154,495, filed May 24, 2002.

Case IPR2013-00330
Patent 7,505,592 B2

The '592 patent relates to subscriber television systems and to providing programming to remote devices (e.g., laptop computers, personal digital assistants) via a local area network (LAN) at a subscriber's location. Ex. 1001, Abstract; col. 1, l. 19-col. 2, l. 23.  The '592 patent describes a need in the art to prevent users from gaining unauthorized access to services with their remote devices.  *Id*. at col. 2, ll. 24-28.

Figure 1 of the '592 patent is reproduced below:



Figure 1 above depicts digital broadband delivery system (DBDS) 100 comprising content providers 114, headend 102, hubs 104, nodes 106, and subscriber locations 108.  *Id*. at col. 5, ll. 47-55.  Subscriber location 108(a) includes digital subscriber communication terminal (DSCT) 110, television 112, and client-receiver 122 (e.g., a laptop computer).  *Id*. at col. 7, ll. 1-11; col. 8, l. 65-col. 9, l. 11; col. 10, ll. 2-7.  DSCT 110 and client-receiver 122 communicate with each other via communication link 120 (e.g., a wireless LAN connection).  *Id*.

Case IPR2013-00330
Patent 7,505,592 B2

A user requests a particular service instance (e.g., pay-per-view program) using client-receiver 122, for example, by selecting it in a web browser display. *Id*. at col. 3, ll. 21-29; col. 21, ll. 40-45. Client-receiver 122 transmits the request to DSCT 110. Col. 21, ll. 40-42. Secure element 314 in DSCT 110 determines whether client-receiver 122 is entitled to the service instance. *Id*. at col. 21, ll. 46-60; col. 22, ll. 21-33. If not, DSCT 110 provides client-receiver 122 with an entitlement for the selected service instance. *Id*. at col. 22, ll. 9-20. DSCT 110 then proceeds to determine whether the service instance is currently accessible (e.g., stored in memory of DSCT 110). *Id*. at col. 21, l. 61-col. 22, l. 8; Fig. 5. If so, DSCT 110 provides the service instance to client-receiver 122. *Id*. If not, DSCT 110 requests the service instance from headend 102 and then provides it to client-receiver 122. *Id*.

### B. Exemplary Claim

Claim 1 of the '592 patent is exemplary of the claims at issue:

1. A method of transmitting service instances to a remote client device in a local network, including a communications device and one or more of said remote client devices, at a subscriber premises, comprising the steps of:

receiving a service instance at the communications device of the subscriber premises from a headend, wherein the service instance is stored in memory of the communications device;

receiving a request at the communications device for the stored service instance from the remote client device;

determining whether the remote client device is entitled to receive the requested stored service instance; and

Case IPR2013-00330
Patent 7,505,592 B2

> responsive to determining the remote client device is
> entitled to receive the requested stored service instance,
> transmitting the requested service instance from the
> communications device to the remote client device.

### C. The Prior Art

Petitioner relies on the following prior art:

1. U.S. Patent No. 5,790,935, issued August 4, 1998 ("Payton") (Ex. 1002);

2. U.S. Patent No. 7,698,723 B2, issued April 13, 2010, filed December 28, 2000 ("Hicks") (Ex. 1003);

3. U.S. Patent Application Publication No. 2002/0146237 A1, published October 10, 2002, filed April 6, 2001 ("Safadi") (Ex. 1004);

4. U.S. Patent Application Publication No. 2003/0110234 A1, published June 12, 2003, filed November 8, 2001 ("Egli") (Ex. 1005); and

5. U.S. Patent Application Publication No. 2003/0135859 A1, published July 17, 2003, filed July 19, 2001 ("Putterman") (Ex. 1006).

### D. The Asserted Grounds

Petitioner challenges claims 1-20 of the '592 patent on the following grounds:

| Reference(s) | Basis | Claim(s) Challenged |
|---|---|---|
| Payton | 35 U.S.C. § 102(b) | 1, 2, 6-8, 12, 13, and 17-20 |
| Hicks | 35 U.S.C. § 102(e) | 1-4, 6-10, 12-15, and 17-20 |
| Hicks and Egli | 35 U.S.C. § 103(a) | 2, 8, and 13 |

Case IPR2013-00330
Patent 7,505,592 B2

| Reference(s) | Basis | Claim(s) Challenged |
|---|---|---|
| Hicks and Safadi | 35 U.S.C. § 103(a) | 3-5, 9-11, and 14-16 |
| Hicks and Putterman | 35 U.S.C. § 103(a) | 6 |

*E. Claim Interpretation*

Consistent with the statute and legislative history of the America Invents Act (AIA), the Board interprets claims using the "broadest reasonable construction in light of the specification of the patent in which [they] appear[]." 37 C.F.R. § 42.100(b); *see also* Office Patent Trial Practice Guide, 77 Fed. Reg. 48756, 48766 (Aug. 14, 2012). There is a "heavy presumption" that a claim term carries its ordinary and customary meaning. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). However, a "claim term will not receive its ordinary meaning if the patentee acted as his own lexicographer and clearly set forth a definition of the disputed claim term in either the specification or prosecution history." *Id*. "Although an inventor is indeed free to define the specific terms used to describe his or her invention, this must be done with reasonable clarity, deliberateness, and precision." *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994). Also, we must be careful not to read a particular embodiment appearing in the written description into the claim if the claim language is broader than the embodiment. *See In re Van Geuns*, 988 F.2d 1181, 1184 (Fed. Cir. 1993) ("[L]imitations are not to be read into the claims from the specification.").

For purposes of this decision, we construe certain claim limitations as follows:

Case IPR2013-00330
Patent 7,505,592 B2

### 1. *"Service Instance" (Claims 1, 6, and 12)*

Independent claim 1 recites "transmitting the requested service instance from the communications device to the remote client device." Independent claims 6 and 12 recite similar limitations. Petitioner argues that "service instance" should be interpreted to mean "a program or service," while Patent Owner argues that the term means "an audio/visual program or real-time interactive services." *See* Pet. 9-10; Prelim. Resp. 12-13.

We are persuaded that Petitioner's proposed interpretation represents the broadest reasonable interpretation in light of the Specification. The Specification of the '592 patent provides various examples of service instances, without limitation:

> The subscriber network system offers subscribers of the system services such as, but not limited to, Internet service and telephone service and potentially hundreds of program selections or service instances. Service instances include, but are not limited to, an installment of an audio or visual or audio/visual program. . . . Service instances include regular programming, special programming such as pay-per-view, and subscriber requested services such as personal television.

Ex. 1001, col. 4, ll. 34-44. Although Patent Owner cites various portions of the Specification referencing "audio/visual" programs and interactive services alleged to be "real-time," these portions merely describe exemplary service instances and do not explicitly define the term. *See, e.g.*, Prelim. Resp. 12-13 (citing Ex. 1001, col. 4, ll. 37-44, and col. 11, ll. 61-66); *see also In re Bigio*, 381 F.3d 1320, 1325 (Fed. Cir. 2004) ("Absent claim language carrying a narrow meaning, the PTO should only limit the claim based on the specification or prosecution history when those sources expressly disclaim the broader definition.").

Case IPR2013-00330
Patent 7,505,592 B2

Applying the broadest reasonable interpretation of the claims in light of the Specification, we interpret the term "service instance" to mean a particular program or service.

### 2. "Remote Client Device" (Claims 1, 6, and 12)

Independent claim 1 recites "receiving a request at the communications device for the stored service instance from the remote client device," "determining whether the remote client device is entitled to receive the requested stored service instance," and "transmitting the requested service instance from the communications device to the remote client device." Independent claims 6 and 12 recite similar limitations. Petitioner argues that "remote client device" means "a smart appliance configured to receive service instances," citing as support a statement in the Specification that client-receiver 122 "can be any smart appliance including, but not limited to, a laptop computer, a computer, a personal digital assistant (PDA), VCR, another DSCT 110, or television, or the like, adapted to receive information or a service instance from the subscriber network system." *See* Pet. 10-11 (citing Ex. 1001, col. 10, ll. 2-7). Patent Owner argues that the term means a "device configured to request and receive service instances." Prelim. Resp. 15. We do not view the Specification's description of what client-receiver 122 "can be" as limiting of the term "remote client device," and instead adopt Patent Owner's proposed interpretation because it is consistent with how the remote client device is used in the claims (e.g., "receiving a request at the communications device for the stored service instance *from the remote client device*" and "transmitting the requested

Case IPR2013-00330
Patent 7,505,592 B2

service instance from the communications device *to the remote client device*" in claim 1) (emphases added).

   Applying the broadest reasonable interpretation of the claims in light of the Specification, we interpret the term "remote client device" to mean a device configured to request and receive service instances.

### *3. "Entitled to Receive" (Claims 1, 6, and 12)*

   Independent claim 1 recites "determining whether the remote client device is entitled to receive the requested stored service instance." Independent claims 6 and 12 recite similar limitations.

   Petitioner argues that "entitled to receive" means "has authority to access." Pet. 11. Petitioner's sole support for its proposed interpretation is the following statement in the Specification: "For the purposes of this disclosure, an entitlement agent is an entity that provides the subscribers of the DBDS with entitlements for services and content associated with the entitlement agent, and *an entitlement is the authority to access a service*." Ex. 1001, col. 4, ll. 19-24 (emphasis added); *see* Pet. 11.

   Patent Owner contends that the phrase "entitled to receive" is defined explicitly in the Specification to mean "permitted to receive," citing the following excerpt:

> The secure element 314 also updates the entitlement map so that the state of the entitlement associated with the service corresponds to the newly granted entitlement. Thus, the secure element 314 can readily determine whether the client-receiver 122 is *entitled to (or is not entitled to), i.e., it is permitted to (or is not permitted to), receive a service instance* merely by checking the entitlement map. . . .

Case IPR2013-00330
Patent 7,505,592 B2

Ex. 1001, col. 22, ll. 21-27 (emphasis added); *see* Prelim. Resp. 15-19.
Patent Owner argues that there is an important difference between being
permitted to "receive" a service instance and having the authority later to
"access" it, and Petitioner's proposed interpretation reads out the "receive"
aspect of the claim language.  Prelim. Resp. 16-18.  Patent Owner argues
that, as described in the Specification, a client-receiver may have the means
to access (i.e., decrypt) a particular service instance, but not be entitled to
receive it in the first place.  *Id*. at 17-18; *see* Ex. 1001, col. 3, ll. 9-13 (the
DSCT "selectively provide[s]" service instances to client-receivers); col. 23,
ll. 20-32 (determination that client-receiver 122 is "not entitled to a
requested service instance"); col. 29, ll. 33-35 ("DSCT 110 can act as a filter
to prevent certain content such as sexually oriented content from being
provided to the client-receiver 122"); col. 31, ll. 4-16 (describing how
service instances are received by client-receiver 122 and then decrypted if
possible).

We agree with Patent Owner's proposed interpretation.  The
Specification, through its use of "i.e.," indicates that the applicant was
defining the phrase "entitled to receive" to mean "permitted to receive."  *See*
Ex. 1001, col. 22, ll. 21-27.  By contrast, the Specification statement relied
upon by Petitioner describes "an entitlement" rather than the specific claim
phrase "entitled to receive."  Further, we are persuaded that the Specification
differentiates between being permitted to "receive" a service instance and
having the authority to "access" it, and that the claims pertain to receiving,
not accessing, in the determination step.

10

Case IPR2013-00330
Patent 7,505,592 B2

Applying the broadest reasonable interpretation of the claims in light of the Specification, we interpret the phrase "entitled to receive" to mean permitted to receive.

### 4. Other Terms

For purposes of this decision, all other terms in claims 1-20 are given their ordinary and customary meaning as would be understood by one with ordinary skill in the art.

## II. DISCUSSION

We turn now to Petitioner's asserted grounds of unpatentability and Patent Owner's arguments in its preliminary response to determine whether Petitioner has met the threshold standard of 35 U.S.C. § 314(a).

### A. Asserted Ground Based on Payton (Ex. 1002)

Petitioner contends that claims 1, 2, 6-8, 12, 13, and 17-20 are anticipated by Payton under 35 U.S.C. § 102(b).  Pet. 16-33.  To support its assertions, Petitioner relies on the declaration of Michael Perkins, Ph.D. (Ex. 1007).  We are not persuaded that Petitioner has established a reasonable likelihood of prevailing on the asserted ground for the reasons explained below.

Payton is directed to a digital broadcast system that "intelligently cach[es] data at the site of the local subscribers to provide a virtual on-demand delivery system."  Ex. 1002, col. 1, ll. 9-14.

11

Case IPR2013-00330
Patent 7,505,592 B2

Figure 2 of Payton is reproduced below:



Figure 2 depicts virtual on-demand digital delivery system 22 comprising
(1) central distribution server 24 with digital repository 34 for storing
content, preferably in encrypted form, (2) local server 28 with local storage
56 for storing content and decryption/decompression processor 60 for
decrypting the content, and (3) playback device 32 (e.g., television). *Id*. at
col. 4, l. 45-col. 5, l. 5; col. 6, ll. 1-23. The system in Payton predicts what
content subscribers may want to view and downloads that content to local
server 28 during "off-peak hours." *Id*. at col. 2, l. 64-col. 3, l. 42; col. 4, ll.
34-44, 51-54. If a subscriber later requests content stored locally, it is
decrypted and provided locally from local server 28 rather than from central
distribution server 24. *Id*. If a subscriber requests content that is not stored
locally, it is provided from central distribution server 24. *Id*. In that way,
the system reduces the number of requests that must be serviced
"on-demand," and reduces the bandwidth usage between subscribers and
central distribution server 24. *Id*.

Case IPR2013-00330
Patent 7,505,592 B2

Figure 8 of Payton, reproduced below, depicts an alternative embodiment where local server 28 is replaced by video server 176 that serves a plurality of local subscribers, for example, in a hotel or apartment complex:



Figure 8 depicts central distribution server 24 and video server 176 connected to playback devices 32.  *Id*. at col. 9, l. 62-col. 10, l. 20.

Petitioner argues that Payton discloses the step of "determining whether the remote client device is entitled to receive the requested stored service instance," as recited in independent claim 1 and similarly recited in independent claims 6 and 12, because the reference discloses that "the digital items are preferably encrypted so that downloaded items cannot be accessed without first being paid for."  *See* Pet. 20 (citing Ex. 1002, col. 4, ll. 64-66).  According to Petitioner, "[o]ne of ordinary skill in the art would have understood that only subscribers [who pay for content] would be able to access content from the local video server of a particular service provider."  *Id*. at 20 (citing Ex. 1007 ¶¶ 66-68).  Petitioner further argues that "the fact that Payton requires that its content be encrypted makes clear that not just anyone has authority to access the stored content."  *Id*. at 21.

We are not persuaded that Payton discloses the determining step recited in the claims.  As explained above, we interpret "entitled to receive"

Case IPR2013-00330
Patent 7,505,592 B2

to mean permitted to receive. *See supra* Section I.E.3. Payton discloses
encrypting items sent from central distribution server 24 to local server 28 so
that the items downloaded to local server 28 "cannot be accessed without
first being paid for." *See* Ex. 1002, col. 4, ll. 64-66. Payton, however, does
not describe a determination being made as to whether a particular *playback
device 32* is permitted to receive an item. *See* Prelim. Resp. 27-29. Nor
does it describe, for example, preventing an item from being sent to the
device after a determination that the device is not permitted to receive it.
*See id*. Rather, Payton states that local server 28 responds to a request from
playback device 32 by sending the requested item:

> In response to a subscriber request, the local server first polls
> the local storage to see if the requested item is stored locally. If
> the item is not immediately available, the local server sends the
> request over the back channel to the central distribution server,
> which places the request in the queue for on-demand broadcast.
> *As soon as the item is received locally, it is sent to a local
> playback device.*

Ex. 1002, col. 3, ll. 25-32 (emphasis added); *see also* col. 4, ll. 51-54 ("[i]n
response to a subscriber's request, the delivery system 22 delivers the
requested item to the subscriber's playback device 32"). Again, Payton does
not describe a determination being made, prior to sending an item, of
whether the playback device is permitted to receive the item.

    Petitioner also relies on the hotel or apartment complex embodiment
shown in Figure 8 of Payton. Pet. 21 (citing Ex. 1007 ¶ 68). As Patent
Owner points out, however, even in that embodiment, Payton does not
describe determining whether the playback device of a particular hotel guest
or apartment resident is permitted to receive a requested item. *See* Prelim.

Case IPR2013-00330
Patent 7,505,592 B2

Resp. 29-31.  Rather, like the other embodiment described above, the video server simply sends the item upon request:

> When one of the subscribers requests an item, the video server either retrieves it from the local storage or requests it from the central distribution server. . . . The video server then assigns the subscriber a dedicated channel and *transmits the item to the requesting subscriber. . . .*

Ex. 1002, col. 10, ll. 5-11 (emphasis added).

We also are not persuaded by the analysis of Dr. Perkins regarding the claimed determining step.  *See* Ex. 1007 ¶¶ 66-68.  For instance, Dr. Perkins testifies that "one of ordinary skill in the art understands that on-demand video servers in hotels and apartment buildings require an authorization step" where the user must order the movie (e.g., by clicking a button on a remote control) before the movie is delivered to the playback device.  *Id.* ¶ 67.  This is insufficient to demonstrate that Payton discloses, expressly or inherently, determining whether a playback device is *permitted to receive* a requested item.  *See Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1255-56 (Fed. Cir. 1989) ("Anticipation requires that every limitation of the claim in issue be disclosed, either expressly or under principles of inherency, in a single prior art reference.").  Further, Petitioner has not pointed to any mechanism in Payton by which its system could determine whether a particular playback device is permitted to receive a requested item (e.g., a way of identifying devices and differentiating between device A that is permitted to receive an item and device B that is not permitted to receive an item).

Finally, because we are not persuaded that Payton discloses the determining step of the claims, we also are not persuaded that Payton discloses the step of "*responsive to determining the remote client device is*

15

Case IPR2013-00330
Patent 7,505,592 B2

*entitled to receive the requested stored service instance*, transmitting the requested service instance from the communications device to the remote client device," as recited in independent claim 1 (emphasis added) and similarly recited in independent claim 12, or the step of "*responsive to determining the remote client device is entitled to receive the requested service instance*, determining whether the requested service instance is accessible within the communications device," as recited in independent claim 6 (emphasis added).  While Payton describes local server 28 transmitting a requested item to playback device 32 if it is available in local server 28, it does not do so *in response to* determining whether playback device 32 is permitted to receive the item because no such determination is made.  *See* Prelim. Resp. 37-39.  Thus, Petitioner also has not made a threshold showing as to the independent claims on that basis.

Based on the information presented in the Petition and accompanying declaration, we conclude that Petitioner has not established a reasonable likelihood of prevailing on its assertion that independent claims 1, 6, and 12, as well as dependent claims 2, 7, 8, 13, and 17-20, are anticipated by Payton under 35 U.S.C. § 102(b).

### B. Asserted Grounds Based on Hicks (Ex. 1003)

Petitioner contends that (1) claims 1-4, 6-10, 12-15, and 17-20 are anticipated by Hicks under 35 U.S.C. § 102(e); (2) claims 2, 8, and 13 are unpatentable over Hicks and Egli under 35 U.S.C. § 103(a); (3) claims 3-5, 9-11, and 14-16 are unpatentable over Hicks and Safadi under 35 U.S.C. § 103(a); and (4) claim 6 is unpatentable over Hicks and Putterman under 35 U.S.C. § 103(a), relying on the analysis of Dr. Perkins in support.  Pet.

Case IPR2013-00330
Patent 7,505,592 B2

33-60.  We are not persuaded that Petitioner has established a reasonable likelihood of prevailing on the asserted grounds for the reasons explained below.

Hicks is directed to a system for providing "multimedia-on-demand services" to remote devices in a home.  Ex. 1003, Abstract.  Figure 1 of Hicks is reproduced below:



Figure 1 depicts a broadband multimedia gateway (BMG) 100 in a home that communicates (e.g., wirelessly) with a plurality of information appliances, such as television 40, computer 50, and electronic book device 70.  *Id*. at col. 6, ll. 7-17; col. 7, l. 43-col. 8, l. 4.  BMG 100 includes mass storage device 103 for storing multimedia content, in encrypted form, that the appliances may download locally.  *Id*. at col. 7, ll. 7-15.  Appliance 300, for instance, includes decryption logic 320 (shown in Figure 3 of Hicks) for decrypting encrypted content sent from BMG 100.  *Id*. at col. 11, ll. 23-29.

Petitioner argues that Hicks discloses the step of "determining whether the remote client device is entitled to receive the requested stored

Case IPR2013-00330
Patent 7,505,592 B2

service instance," as recited in independent claim 1, and similarly recited in independent claims 6 and 12, because the reference discloses using conditional access (CA) techniques and Digital Transmission Content Protection (DTCP). Pet. 38-40 (citing Ex. 1003, col. 4, ll. 17-27, and col. 9, ll. 16-36, and Ex. 1007 ¶¶ 95-108). According to Petitioner, one of ordinary skill in the art would have understood that the BMG in Hicks "could determine whether the requesting device is authorized to receive the content" and that "DTCP can be used to determine whether a requesting device is authorized to access multimedia content." *Id.* at 38-39. Petitioner further contends that because the content is stored in encrypted form and decrypted, "not just any device has access to the stored content and . . . the BMG must determine whether the requesting device is allowed to receive the media item." *Id.* at 40 (citing Ex. 1007 ¶¶ 104-07).

We are not persuaded that Hicks discloses the determining step recited in the claims. Like Payton, Hicks does not describe a determination being made as to whether a particular appliance is permitted to receive an item, or, for example, preventing an item from being sent to the appliance after a determination that the appliance is not permitted to receive it. *See* Prelim. Resp. 44-48. Instead, BMG 100 simply transmits content to the appliances and Hicks relies on the appliances to allow or not allow access to the content (via decryption logic 320 in appliance 300). *See* Ex. 1003, col. 7, ll. 43-47; col. 8, ll. 5-12; col. 11, ll. 23-29; Ex. 1007 ¶ 104. Further, we agree with Patent Owner that determining whether a device is authorized to *access* (i.e., decrypt) content is not the same as determining whether a device is permitted to *receive* the content. *See* Prelim. Resp. 48-49. Petitioner has not shown sufficiently that Hicks performs the latter step.

Case IPR2013-00330
Patent 7,505,592 B2

We also do not find Dr. Perkins's analysis regarding the claimed determining step persuasive. *See* Ex. 1007 ¶¶ 95-108. Dr. Perkins describes how Hicks determines whether an appliance is authorized to access (i.e., decrypt) content, not how it determines whether an appliance is permitted to receive content. *See id*. Moreover, Dr. Perkins's opinions are speculative and insufficient to demonstrate anticipation. *See Corning Glass*, 868 F.2d at 1255-56. For example, Dr. Perkins describes what the BMG in Hicks "could" do, as opposed to what the reference expressly or inherently discloses the BMG as doing:

> Based on Hicks['s] disclosure of using CA technology within a residential network, one of ordinary skill in the art would understand that the BMG itself *could* maintain a database with each remote client device's authorizations, i.e., the BMG would be a mini subscriber management system. Therefore, when a request is received at the BMG for a service instance, the BMG *could* use this database to determine whether the requesting device is authorized to receive it. If it is, the service instance would be delivered in an encrypted format to a remote client device which might possibly use smartcard decryption technology.

Ex. 1007 ¶ 103 (emphasis added; emphasis in original removed).

Further, because we are not persuaded that Hicks discloses the determining step of the claims, we also are not persuaded that Hicks discloses the step of "*responsive to determining the remote client device is entitled to receive the requested stored service instance*, transmitting the requested service instance from the communications device to the remote client device," as recited in independent claim 1 (emphasis added) and similarly recited in independent claim 12, or the step of "*responsive to determining the remote client device is entitled to receive the requested service instance*, determining whether the requested service instance is

Case IPR2013-00330
Patent 7,505,592 B2

accessible within the communications device," as recited in independent
claim 6 (emphasis added).  While Hicks discloses BMG 100 transmitting
content to an appliance if it is available in mass storage device 103, it does
not do so *in response to* determining whether the appliance is permitted to
receive the content because no such determination is made.  *See* Prelim.
Resp. 50-51.  Thus, Petitioner also has not made a threshold showing as to
the independent claims on that basis.

Finally, as to independent claim 6, Petitioner argues that the claim is
unpatentable over Hicks and Putterman.  Pet. 59-60.  Petitioner contends that
the claim steps "determining whether the remote client device is entitled to
receive the requested stored service instance" and "responsive to
determining the remote client device is entitled to receive the requested
service instance, determining whether the requested service instance is
accessible within the communications device," would have been obvious in
view of Putterman and that a person of ordinary skill in the art would have
combined the references.  *Id*.  We are not persuaded that Putterman teaches
determining whether a service instance is "accessible" within a
communications device.  Petitioner cites step 1040 shown in Figure 10 of
Putterman, but that step merely involves a module "search[ing]" for a media
object that exists, not determining whether the media object is "accessible."
*See* Ex. 1006 ¶ 58; Pet. 60.  Further, Petitioner has not explained sufficiently
how or why a person of ordinary skill would have combined the different
teachings of Hicks and Putterman to achieve the method recited in claim 6.
Thus, Petitioner also has not made a threshold showing as to the alleged
obviousness of claim 6.

Case IPR2013-00330
Patent 7,505,592 B2

Based on the information presented in the Petition and accompanying declaration, we conclude that Petitioner has not established a reasonable likelihood of prevailing on its assertion that claims 1-4, 6-10, 12-15, and 17-20 are anticipated by Hicks under 35 U.S.C. § 102(e), or its assertion that claims 2-6, 8-11, and 13-16 are unpatentable over Hicks in combination with Egli, Safadi, or Putterman under 35 U.S.C. § 103(a).

*C. Conclusion*

We conclude that Petitioner has not demonstrated a reasonable likelihood that at least one of the challenged claims is unpatentable based on the asserted grounds.  Therefore, we do not institute an *inter partes* review on any of the asserted grounds as to any of the challenged claims.

III. ORDER

In consideration of the foregoing, it is hereby:

ORDERED that the Petition is denied as to all challenged claims of the '592 patent.

21

Case IPR2013-00330
Patent 7,505,592 B2

PETITIONER:

Amy E. Simpson
Bing Ai
Nicholas T. Bauz
PERKINS COIE LLP
ASimpson@perkinscoie.com
opentv-cisco-ipr@perkinscoie.com

PATENT OWNER:

David L. McCombs
Theodore M. Foster
Jamie McDole
HAYNES AND BOONE, LLP
David.mccombs.ipr@haynesboone.com
theo.foster@haynesboone.com
jamie.mcdole@haynesboone.com