# Exhibit C

Trials@uspto.gov
571-272-7822

Paper 9
Entered: November 29, 2013

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

OPENTV, INC.
Petitioner

v.

CISCO TECHNOLOGY, INC.
Patent Owner
_____

Case IPR2013-00329
Patent 6,252,964 B1

Before KALYAN K. DESHPANDE, JUSTIN T. ARBES, and
PATRICK M. BOUCHER, *Administrative Patent Judges.*

ARBES, *Administrative Patent Judge.*

DECISION
Institution of *Inter Partes* Review
*37 C.F.R. § 42.108*

Case IPR2013-00329
Patent 6,252,964 B1

OpenTV, Inc. filed a Petition ("Pet.") to institute an *inter partes* review of claims 1-6 of U.S. Patent No. 6,252,964 B1 (Ex. 1001, "the '964 patent") pursuant to 35 U.S.C. § 311 *et seq.* Patent Owner Cisco Technology, Inc. filed a preliminary response ("Prelim. Resp.") to the Petition. We have jurisdiction under 35 U.S.C. § 314. For the reasons that follow, the Board has determined to institute an *inter partes* review.

# I. BACKGROUND

The standard for instituting an *inter partes* review is set forth in 35 U.S.C. § 314(a):

> THRESHOLD—The Director may not authorize an inter partes review to be instituted unless the Director determines that the information presented in the petition filed under section 311 and any response filed under section 313 shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition.

Petitioner challenges claims 1-4 as anticipated under 35 U.S.C. § 102(b) and claims 1-6 as unpatentable under 35 U.S.C. § 103(a). Pet. 19-60. We grant the Petition as to claims 1-4 on certain grounds of unpatentability as discussed below.

## A. The '964 Patent (Ex. 1001)

The '964 patent, titled "Authorization of Services in a Conditional Access System," issued on June 26, 2001, based on Application No. 09/488,230, filed January 20, 2000.

The '964 patent relates to "systems for protecting information that is transmitted by means of a wired or wireless medium against unauthorized access." Ex. 1001, col. 1, ll. 42-45. For example, a cable television or

Case IPR2013-00329
Patent 6,252,964 B1

satellite television company may want to ensure that only designated
subscribers can access certain television programs.  *Id*. at col. 1, l. 48-col. 2,
l. 33.

     Figure 1 of the '964 patent is reproduced below:

Figure 1 depicts conditional access system 101 in which service distribution
organization (SDO) 103 (e.g., a cable television company) provides service
"instances" to set-top boxes 113 of various subscribers.  *Id*. at col. 4, ll.
10-19.  For example, the "History Channel" is a "service that provides
television programs about history," and "[e]ach program provided by the
History Channel is an 'instance' of that service."  *Id*. at col. 4, ll. 16-19.
Service distribution organization 103 encrypts or scrambles an instance to
create encrypted instance 105, which it then broadcasts to subscribers over
transmission medium 112 (e.g., cable).  *Id*. at col. 4, ll. 19-22, 33-38.  As
shown in Figure 1 above, encrypted instance 105 includes instance data 109

Case IPR2013-00329
Patent 6,252,964 B1

(information making up the television program) and entitlement control messages (ECMs) 107 (information necessary for the receiving set-top box to decrypt the data). *Id*. at col. 4, ll. 22-27. ECMs may be sent many times per second so that the set-top box has the most current information, and ECMs may be changed every few seconds to prevent piracy. *Id*. at col. 4, ll. 27-32.

In addition to encrypted instance 105, service distribution organization 103 sends to a set-top box entitlement management messages (EMMs) 111, which may indicate, for example, what services the subscriber associated with that set-top box has purchased and include a key for a particular service. *Id*. at col. 4, ll. 47-50, 56-58. EMMs are used by the set-top box in the authorization process. *Id*. at col. 4, ll. 38-47; col. 4, l. 56-col. 5, l. 6. The set-top box stores the information contained in EMMs as authorization information 121, and uses authorization information 121 in combination with ECMs 107 to determine whether the subscriber is entitled to watch encrypted instance 105. *Id*. If the subscriber is entitled to watch the instance, the set-top box decrypts encrypted instance 105 to produce decrypted instance 123 and sends decrypted instance 123 to the television for viewing. *Id*. at col. 4, ll. 38-41.

The '964 patent describes specifically how a set-top box, or digital home communications terminal (DHCT), is permitted to access a service instance via the operation of a number of entities, including a conditional access authority (CAA) and entitlement agents (EAs). EAs send entitlement information (e.g., in EMMs) to the DHCT. *Id*. at col. 30, ll. 48-51. The CAA "provides and removes entitlement agents," and facilitates communication between the DHCT and EAs. *Id*. at col. 10, l. 16-48; Fig. 24

4

Case IPR2013-00329
Patent 6,252,964 B1

(depicting CAA 2405 and EAs 2409).  DHCT 333 "receives and interprets

EMMs [and] ECMs," "decrypts instances of services," and sends messages

back to the CAA and EAs over a reverse path.  *Id*. at col. 15, ll. 17-23.

DHCT 333 includes digital home communications terminal secure element

(DHCTSE) 627, which comprises (1) a secure memory for storing keys and

other information, and (2) a secure microprocessor for processing incoming

EMMs and ECMs and producing the return messages.  *Id*. at col. 15,

l. 49-col. 16, l. 9; Figs. 12 (depicting DHCTSE 627), 13 (depicting memory

1207 in DHCTSE 627).

The '964 patent also describes the encryption mechanism of the

disclosed system in greater detail.  Figure 3 of the '964 patent is reproduced

below:

Figure 3 depicts the interactions between a service origination component

305 and DHCT 333.  A customer, for example, orders a service instance

Case IPR2013-00329
Patent 6,252,964 B1

provided by a particular EA. *Id.* at col. 11, ll. 54-55. Before the EA can communicate with the customer's DHCT, the CAA transmits to the DHCT (in an EMM) the public key of the EA and a sealed digest, both in encrypted form. *Id.* at col. 11, ll. 20-33, 56-65. The DHCTSE decrypts the message, allocates storage space in secure memory, and stores the public key of the EA in the allocated space. *Id.* at col. 11, ll. 34-44; col. 16, ll. 6-9. The EA now can communicate with the DHCT. The EA transmits to the DHCT (in an EMM) a multi-session key (MSK), entitlements for particular service instances, and a sealed digest, each in encrypted form. *Id.* at col. 11, ll. 41-48; col. 11, l. 66-col. 12, l. 9; col. 12, ll. 15-28. The DHCTSE decrypts the message and stores the MSK and entitlements in secure memory. *Id.* The DHCT now has access to the service instances to which it has been entitled. The EA transmits the service instances and a control word (in an ECM), both in encrypted form. *Id.* at col. 9, ll. 1-13, 34-48; col. 12, ll. 10-14; col. 15, l. 61-col. 16, l. 2. The DHCTSE decrypts the message to obtain the control word and provides the control word to a decryption module to decrypt the service instance for display to the user. *Id.*

### B. Exemplary Claim

Claim 1 of the '964 patent is exemplary of the claims at issue:

1. Conditional access apparatus for giving a receiver conditional access to an instance of service received in the receiver, one or more entitlements to access the instance of service being given by one or more entitlement agents and the conditional access apparatus comprising:

entitlement agent establishment apparatus in the receiver for establishing at least one of the entitlement agents in the conditional access apparatus;

Case IPR2013-00329
Patent 6,252,964 B1

entitlement specification apparatus in the receiver for specifying the one or more entitlements for the at least one entitlement agent, and wherein the entitlement agent establishment apparatus and the entitlement specification apparatus operate in response to further messages received in the receiver; and

access granting apparatus in the receiver for granting access to the instance of service in response to a first message received in the receiver which indicates the entitlement agent and the entitlement only if the entitlement agent establishment apparatus has established the entitlement agent, and the entitlement specification apparatus has granted the entitlement, and wherein the entitlement agent establishment apparatus disestablishes the entitlement agent in response to a given message of the further messages.

## C. The Prior Art

Petitioner relies on the following prior art:

1. U.S. Patent No. 4,771,458, issued September 13, 1988 ("Citta") (Ex. 1005);

2. U.S. Patent No. 4,995,080, issued February 19, 1991 ("Bestler '080") (Ex. 1004);

3. U.S. Patent No. 5,680,457, filed April 25, 1995, issued October 21, 1997, continuation-in-part of application filed January 18, 1995 ("Bestler '457") (Ex. 1003); and

4. *Conditional Access System for the MAC/PACKET Family: Eurocrypt*, March 1989 ("Eurocrypt") (Ex. 1002).[1]

---

[1] We refer to "Eurocrypt" as the English translation (Ex. 1002 at 1-175) of the original reference (Ex. 1002 at 177-354). Petitioner provided an affidavit attesting to the accuracy of the translation. *See* Ex. 1002 at 176; 37 C.F.R. § 42.63(b).

Case IPR2013-00329
Patent 6,252,964 B1

## D. The Asserted Grounds

Petitioner challenges claims 1-6 of the '964 patent on the following
grounds:

| Reference(s) | Basis | Claims Challenged |
|---|---|---|
| Eurocrypt | 35 U.S.C. § 102(b) | 1-4 |
| Bestler '457 | 35 U.S.C. § 103(a) | 1-4 |
| Bestler '457, Bestler '080, and Citta | 35 U.S.C. § 103(a) | 5 and 6 |
| Eurocrypt, Bestler '080, and Citta | 35 U.S.C. § 103(a) | 5 and 6 |

## E. Claim Interpretation

Consistent with the statute and legislative history of the America
Invents Act (AIA), the Board interprets claims using the "broadest
reasonable construction in light of the specification of the patent in which
[they] appear[]." 37 C.F.R. § 42.100(b); *see also* Office Patent Trial
Practice Guide, 77 Fed. Reg. 48756, 48766 (Aug. 14, 2012). There is a
"heavy presumption" that a claim term carries its ordinary and customary
meaning. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed.
Cir. 2002). However, a "claim term will not receive its ordinary meaning if
the patentee acted as his own lexicographer and clearly set forth a definition
of the disputed claim term in either the specification or prosecution history."
*Id.* "Although an inventor is indeed free to define the specific terms used to
describe his or her invention, this must be done with reasonable clarity,
deliberateness, and precision." *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir.
1994). Also, we must be careful not to read a particular embodiment

Case IPR2013-00329
Patent 6,252,964 B1

appearing in the written description into the claim if the claim language is broader than the embodiment.  *See In re Van Geuns*, 988 F.2d 1181, 1184 (Fed. Cir. 1993) ("[L]imitations are not to be read into the claims from the specification.").

For purposes of this decision, we construe certain claim limitations as follows:

### 1. *"Instance of Service" (Claims 1, 3, and 5)*

Independent claims 1, 3, and 5 recite conditional access apparatuses for "giving a receiver conditional access to an instance of service received in the receiver, one or more entitlements to access the instance of service being given by one or more entitlement agents."  Petitioner argues that "instance of service" should be interpreted to mean "a program or a service," while Patent Owner argues that the term means "digital broadcast or interactive sessions."  *See* Pet. 11; Prelim. Resp. 15-16.

We are persuaded that Petitioner's proposed interpretation represents the broadest reasonable interpretation in light of the Specification.  The Specification of the '964 patent describes an "instance" as a particular program or service, which can be encrypted and decrypted.  *See, e.g.*, Ex. 1001, Abstract ("A cable television system provides conditional access to services.  The cable television system includes a headend from which service 'instances,' or programs, are broadcast. . . ."); col. 4, ll. 12-19 ("A service distribution organization 103 . . . provides its subscribers with information from a number of services, that is, collections of certain kinds of information.  For example, the History Channel is a service that provides television programs about history.  Each program provided by the History

Case IPR2013-00329
Patent 6,252,964 B1

Channel is an 'instance' of that service."); col. 1, l. 63-col. 2, l. 7.  Although
Patent Owner cites various portions of the Specification referencing "digital"
programs and "interactive sessions," these portions merely describe
exemplary instances and do not define explicitly the term "instance of
service." *See, e.g.*, Prelim. Resp. 15-16 (citing Ex. 1001, col. 2, ll. 46-51,
and col. 34, ll. 58-60); *see also In re Bigio*, 381 F.3d 1320, 1325 (Fed. Cir.
2004) ("Absent claim language carrying a narrow meaning, the PTO should
only limit the claim based on the specification or prosecution history when
those sources expressly disclaim the broader definition.").  Indeed, Patent
Owner acknowledges that the Specification describes service instances to
include more than just digital broadcast and interactive sessions.  *See* Prelim.
Resp. 12 ("[t]he service instances include, among other things, digital
broadcast and interactive services").

Applying the broadest reasonable interpretation of the claims in light
of the Specification, we interpret the term "instance of service" to mean a
particular program or service.

### 2. *"Entitlement Agent" (Claims 1, 3, and 5)*

Independent claims 1, 3, and 5 recite "one or more entitlements to
access the instance of service being given by one or more entitlement
agents."  Petitioner argues that "entitlement agent" means:

> any one, or a combination of, a program or service provider, an
> entity or function that is located outside of the receiver and acts
> on behalf of a program or service provider, or an entity or
> function that is located outside of the receiver that has the right
> to provide the receiver access authorization to one or more
> programs or services.

Case IPR2013-00329
Patent 6,252,964 B1

Pet. 12-13.  As support, Petitioner cites statements made by the applicants during the prosecution of the '964 patent that an entitlement agent is what provides specific instances of service.  *Id.* (citing Ex. 1006 at 17, 53-54).  Petitioner also argues that the Specification of the '964 patent describes an entitlement agent as "an entity or function that resides outside of a receiver and gives or authorizes access rights or entitlements to a program or service through remote message, and in some instances, on behalf of a program or service provider."  *Id.* at 13-14.  The portions of the Specification cited by Petitioner, however, do not support the proposed definition above and, in any event, merely describe exemplary "entitlement agents" rather than defining the term.

Patent Owner's proposed interpretation of "entitlement agent" is "an entity that provides digital broadcast or interactive session entitlement information to receivers."  Prelim. Resp. 20.  We agree with Patent Owner that an "entitlement agent" provides entitlement information to receivers.  *See, e.g.*, Ex. 1001, col. 8, ll. 12-15; col. 30, ll. 48-51.  We disagree, however, to the extent Patent Owner's proposed interpretation recites "digital broadcast or interactive session" entitlement information.  As explained above, an "instance of service" is a particular program or service, not a "digital broadcast or interactive session."  *See supra* Section I.E.1.

Applying the broadest reasonable interpretation of the claims in light of the Specification, we interpret "entitlement agent" to mean an entity that provides program or service entitlement information to receivers.

Case IPR2013-00329
Patent 6,252,964 B1

### 3. *"Entitlement Agent Establishment Apparatus in the Receiver" and "Entitlement Specification Apparatus in the Receiver" (Claims 1, 3, and 5)*

The parties' proposed interpretations of "entitlement agent establishment apparatus in the receiver" and "entitlement specification apparatus in the receiver" in independent claims 1, 3, and 5 are as follows:

| Term | Petitioner's Proposed Interpretation | Patent Owner's Proposed Interpretation |
|---|---|---|
| entitlement agent establishment apparatus in the receiver | any one, or a combination of[,] a device, a component within a device, a microprocessor or a controller, in the receiver, for establishing one or more entitlement agents | a processor and memory in the receiver operable to establish multiple entitlement agents |
| entitlement specification apparatus in the receiver | any one, or a combination of, a device, a component within a device, a microprocessor or a controller, in the receiver, for specifying one or more entitlements | a processor and memory in the receiver operable to specify entitlements for multiple entitlement agents |

*See* Pet. 14-16; Prelim. Resp. 16-18.  Other than in the claims, the '964 patent does not use the terms "entitlement agent establishment apparatus" and "entitlement specification apparatus."  The Specification, however, describes how the DHCT, including the DHCTSE with a secure memory and secure microprocessor, establishes entitlement agents and specifies entitlements for an entitlement agent.  *See, e.g.*, Ex. 1001, col. 7, l. 18-col. 13, l. 9; col. 15, l. 15-col. 16, l. 9; Figs. 3-4, 6, 12-13.

The primary dispute between the parties is with respect to the number of entitlement agents required.  Petitioner argues that the apparatuses are for

Case IPR2013-00329
Patent 6,252,964 B1

establishing, and specifying entitlements for, "one or more" entitlement
agents, while Patent Owner asserts that they must be for "multiple"
entitlement agents. *See* Pet. 14-16; Prelim. Resp. 16-18. We agree with
Petitioner. While Patent Owner is correct that exemplary embodiments
described in the Specification have multiple entitlement agents, *see* Prelim.
Resp. 16-18, the claims recite an "entitlement agent establishment apparatus
in the receiver for establishing *at least one* of the entitlement agents in the
conditional access apparatus" and an "entitlement specification apparatus in
the receiver for specifying the one or more entitlements for the *at least one*
entitlement agent" (emphases added). Likewise, the Specification describes
exemplary embodiments including a processor and memory, *see id*., but does
not disclose an "entitlement agent establishment apparatus" or "entitlement
specification apparatus" as being so limited.

Applying the broadest reasonable interpretation of the claims in light
of the Specification, we interpret "entitlement agent establishment apparatus
in the receiver" to mean a device in the receiver operable to establish one or
more entitlement agents, and interpret "entitlement specification apparatus in
the receiver" to mean a device in the receiver operable to specify one or
more entitlements for one or more entitlement agents.

### 4. *"Access Granting Apparatus in the Receiver" (Claims 1, 3, and 5)*

Petitioner argues that the term "access granting apparatus in the
receiver" in independent claims 1, 3, and 5 should be interpreted to mean
"any one, or a combination of, a device, a component within a device, a
microprocessor or a controller, in the receiver, for granting access to a
program or service received at the receiver." Pet. 14-16. Patent Owner does

Case IPR2013-00329
Patent 6,252,964 B1

not dispute Petitioner's proposed interpretation other than to replace "program or service" with "digital broadcast or interactive sessions." Prelim. Resp. 18-19. We do not adopt this language because the "instance of service" language in the claims is not limited to "digital broadcast[s] or interactive sessions," as explained above. *See supra* Section I.E.1. Further, the digital embodiments in the Specification are examples and do not define the term "access granting apparatus in the receiver" (which only appears in the claims of the '964 patent).

Applying the broadest reasonable interpretation of the claims in light of the Specification, we interpret "access granting apparatus in the receiver" to mean a device in the receiver operable to grant access to a program or service received at the receiver.

### 5. *"Conditional Access Authority"* (Claims 2, 4, and 5)

Claims 2 and 4 recite that "the entitlement agent establishment apparatus includes a first key representing a conditional access authority." Claim 5 recites that "the entitlement agent establishment apparatus includes other keys representing conditional access authorities." Petitioner does not propose a specific interpretation for "conditional access authority." Patent Owner argues that the term means an "entity that provides and removes entitlement agents and places limits on the services to which an entitlement agent may grant entitlements," citing portions of the Specification in support. Prelim. Resp. 20-21. We agree with Patent Owner in part. The Specification provides that "[t]he entity which provides and removes entitlement agents is called the conditional access authority (CAA)." Ex. 1001, col. 10, ll. 16-17. The Specification then describes seven

14

Case IPR2013-00329
Patent 6,252,964 B1

"advantages" of the disclosed arrangement, one of which is that the arrangement "places limits on the services to which an entitlement agent may grant entitlements." *Id*. at col. 10, ll. 26-48. We do not read these "advantages" as defining the term "conditional access authority." Moreover, they apply to the disclosed arrangement as a whole, not the conditional access authority by itself.

Applying the broadest reasonable interpretation of the claims in light of the Specification, we interpret "conditional access authority" to mean an entity that provides and removes entitlement agents.

### 6. Other Terms

For purposes of this decision, all other terms in claims 1-6 are given their ordinary and customary meaning as would be understood by one with ordinary skill in the art.

### II. DISCUSSION

We turn now to Petitioner's asserted grounds of unpatentability and Patent Owner's arguments in its preliminary response to determine whether Petitioner has met the threshold standard of 35 U.S.C. § 314(a).

### A. Asserted Grounds Based on Eurocrypt

Petitioner contends that claims 1-4 are anticipated by Eurocrypt under 35 U.S.C. § 102(b), and claims 5 and 6 are unpatentable over Eurocrypt, Bestler '080, and Citta under 35 U.S.C. § 103(a). Pet. 27-38, 56-60. To support its assertions, Petitioner relies on the declaration of Mr. Alan Young (Ex. 1007). We are persuaded for the reasons explained below that

15

Case IPR2013-00329
Patent 6,252,964 B1

Petitioner has established a reasonable likelihood of prevailing on its assertion that claims 1-4 are unpatentable.

### 1. Eurocrypt (Ex. 1002)

Eurocrypt is directed to a conditional access system that "permits ensuring that . . . television, radio or data services programs are only accessible to those users who meet very specific conditions, associated generally with a payment." Ex. 1002 at 7.  It does so by sending ECMs and EMMs to receivers.  *Id*. at 20.

Case IPR2013-00329
Patent 6,252,964 B1

Figure 1 on page 10 of Eurocrypt is reproduced below:



Figure 1 above depicts a "scrambled source" being sent from an encoder in the conditional access system to a decoder, where it is unscrambled if the decoder has the right information.  *Id*. at 8-10.  Specifically, the decoder receives an issuing key (IK) and unique address (UA).  *Id*.  As shown in the "ECM path" in the figure above, the encoder sends to the decoder (in an ECM) control words (CWs) and program parameters (P), both encrypted

using an operating key (SK) of a service provider.  *Id*. at 8-10, 25.  As
shown in the "EMM path," the encoder also sends to the decoder (in an
EMM) (1) the SK, encrypted using either the management key (PDK) of the
service provider or the issuing key (IK), and (2) access entitlements E,
encrypted with the PDK.  *Id*. at 8-10.  The entitlements are stored in
"Entitlement memory" in the decoder, *id*. at 8-10, 13, and one of the
parameters sent in the EMM is "the maximum memory size allocated to the
service operator," *id*. at 36.

As shown in the hierarchy of Figure 1 above, the decoder uses IK, SK,
PDK, and CWs to generate the unscrambling sequence to unscramble the
source content.  *Id*. at 8-10.  New service providers are added in Eurocrypt
by sending new keys (SK and PDK), and removed by deleting keys.  *Id*. at 9
(lines 17-22), 11.  Eurocrypt discloses an "issuer" that maintains the IK and
distributes and invalidates the service keys.  *Id*. at 9, 11.

## 2. Anticipation

Petitioner contends that Eurocrypt discloses all of the limitations of
claims 1-4.  Pet. 27-38.  For example, with respect to independent claim 1,
Petitioner argues that Eurocrypt discloses a "conditional access apparatus"
(decoder in Figure 1), one or more "entitlement agents" (a service provider),
and an "entitlement agent establishment apparatus in the receiver" (one or
more of the "ECM uncrypting" module, "Entitlement memory," and "EMM
uncrypting" modules in Figure 1) that establishes a service provider by
receiving, decoding, and storing the SK and PDK (associated with the
service provider), and disestablishes a service provider in response to a
message.  *Id*. at 27-31, 35-36; *see* Ex. 1007 at 50-53, 56-57.  Petitioner

Case IPR2013-00329
Patent 6,252,964 B1

further argues that Eurocrypt discloses an "entitlement specification apparatus in the receiver" (one or more of the "ECM uncrypting" module, "Entitlement memory," and "EMM uncrypting" modules in Figure 1) that specifies entitlements for a service provider, and an "access granting apparatus in the receiver" (one or more of the "unscrambling sequence generator" module, "CW local control word" module, "CW computation" module, and "ECM uncrypting" module in Figure 1) that grants access to a program. Pet. 31-35; *see* Ex. 1007 at 53-56. Based on the current record and claim interpretations set forth above, we are persuaded that Petitioner has made a threshold showing that Eurocrypt discloses all of the limitations of claim 1.

Patent Owner makes three arguments as to claim 1. First, Patent Owner argues that Eurocrypt does not disclose "entitlement agents" because the service providers in Eurocrypt provide analog broadcasts, not "digital broadcasts or interactive sessions," and does not disclose an "entitlement agent establishment apparatus in the receiver" because Eurocrypt does not disclose establishing multiple entitlement agents. Prelim. Resp. 25-27. Second, Patent Owner argues that Eurocrypt does not disclose "entitlements" because its entitlements are for analog broadcasts, not "digital broadcast[s] and interactive sessions," and does not disclose an "entitlement specification apparatus in the receiver" because Eurocrypt does not specify entitlements for multiple entitlement agents. *Id.* at 28-29. Third, Patent Owner argues that Eurocrypt does not disclose an "access granting apparatus in the receiver" for granting access to an "instance of service" because it discloses analog broadcasts, not "digital broadcast[s] and interactive sessions." *Id.* at 30-31. Patent Owner also argues as to claim 2 that the

19

Case IPR2013-00329
Patent 6,252,964 B1

issuer in Eurocrypt is not a "conditional access authority" because it does not have ultimate authority to remove entitlement agents and place limits on the services offered by entitlement agents. *Id*. at 31-33; *see* Pet. 36-37.

All of Patent Owner's arguments regarding Eurocrypt are premised on its proposed claim interpretations of the disputed limitations, with which we do not agree for the reasons explained above. *See* Sections I.E.1-5. Specifically, we interpret "entitlement agent" to mean an entity that provides *program or service* entitlement information to receivers; "entitlement agent establishment apparatus in the receiver" to mean a device in the receiver operable to establish *one or more* entitlement agents; "entitlement specification apparatus in the receiver" to mean a device in the receiver operable to specify one or more entitlements for *one or more* entitlement agents; "instance of service" to mean a particular *program or service*; and "conditional access authority" to mean an entity that provides and removes entitlement agents. Based on the current record, Petitioner has shown sufficiently that these limitations are present in Eurocrypt.

Upon review of Petitioner's analysis and Mr. Young's declaration, we are persuaded that Petitioner has made a threshold showing that claim 1, as well as claims 2-4, are anticipated by Eurocrypt.

### 3. Obviousness

Petitioner contends that claims 5 and 6 are unpatentable over Eurocrypt, Bestler '080, and Citta under 35 U.S.C. § 103(a). Pet. 56-60. Upon review of Petitioner's analysis and Mr. Young's declaration, we are persuaded that Petitioner has not demonstrated a reasonable likelihood of prevailing as to claims 5 and 6.

Case IPR2013-00329
Patent 6,252,964 B1

Petitioner argues that Eurocrypt, Bestler '080, and Citta together teach all of the limitations of the challenged claims, relying on the analysis of Mr. Young. *Id.* at 56-60 (citing Ex. 1007 ¶¶ 111-12). Petitioner further contends that each of the three references "describe[s] a conditional access system that allows dynamic change of conditional access system parameters through remote messages," that Bestler '080 references Citta in its disclosure, and that Eurocrypt was a "widely known publication." *Id.* at 56. Based on these facts, "one of ordinary skill in the art would have been motivated to combine the teachings of Eurocrypt with those of Bestler 080 and Citta," according to Petitioner. *Id.*

The mere fact that Eurocrypt, Bestler '080, and Citta describe similar conditional access systems is not, by itself, a sufficient rationale for a person of ordinary skill in the art to have made the asserted combination. Nor is the fact that Bestler '080 references Citta, or that Eurocrypt allegedly was widely known in the art. Rather, Petitioner must show "'some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness.'" *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007) (citation omitted). Petitioner has not done so.

To illustrate, Petitioner relies on Eurocrypt for all limitations of claim 5 other than "the entitlement agent establishment apparatus changes a first key in response to at least first and second message[s] of the further messages" and "the entitlement agent establishment apparatus using the other keys to determine whether the at least first and second messages are authentic and changing the other keys only when the at least first and second messages are authentic," and relies on Bestler '080 and Citta for those limitations. Pet. 57-60; *see* Ex. 1007 at 58-60. Petitioner argues that the

Case IPR2013-00329
Patent 6,252,964 B1

three references are in the "same technical field" and, therefore, it would have been obvious to an ordinarily skilled artisan "to use the teachings of [Bestler '080] and Citta, which describe changing of a key in a subscriber terminal using two messages, to complement the specifications provided in Eurocrypt to change the keys representing conditional access authorities." Pet. 59-60. Petitioner does not explain sufficiently why the cited secondary references would "complement" Eurocrypt or otherwise point to a sufficient reason *why* a person of ordinary skill in the art would have modified the Eurocrypt system to incorporate the key changing features of Bestler '080 and Citta. Petitioner's analysis as to claim 6 is similarly deficient. *See* Pet. 60; Ex. 1007 at 58-60.

### 4. Summary

Based on the information presented in the Petition and accompanying declaration, we conclude that Petitioner has established a reasonable likelihood of prevailing on its assertion that claims 1-4 are anticipated by Eurocrypt under 35 U.S.C. § 102(b), but has not established a reasonable likelihood of prevailing on its assertion that claims 5 and 6 are unpatentable over Eurocrypt, Bestler '080, and Citta under 35 U.S.C. § 103(a).

### B. Asserted Grounds Based on Bestler '457

Petitioner contends that claims 1-4 are unpatentable over Bestler '457 under 35 U.S.C. § 103(a), and claims 5 and 6 are unpatentable over Bestler '457, Bestler '080, and Citta under 35 U.S.C. § 103(a), relying on the analysis of Mr. Young in support. Pet. 38-56. We are persuaded that

Case IPR2013-00329
Patent 6,252,964 B1

Petitioner has established a reasonable likelihood of prevailing on its
assertion that claims 1-4 are unpatentable for the reasons explained below.

### 1. Whether Bestler '457 is Prior Art Under 35 U.S.C. § 102(e)

The parties disagree as to whether Bestler '457 is prior art to the '964
patent under 35 U.S.C. § 102(e).  *See* Pet. 4-5, 22; Prelim. Resp. 23.  The
application that issued as the '964 patent, Application No. 09/488,230 ("the
'230 application"), was filed January 20, 2000.  The '964 patent states that it
is a continuation of Application No. 09/127,352 ("the '352 application"),
filed July 31, 1998, and also a continuation-in-part of two applications:
(1) Application No. 08/580,759 ("the '759 application"), filed December 29,
1995, and issued on February 9, 1999; and (2) Application No. 08/415,617
("the '617 application"), filed April 3, 1995, and issued on April 21, 1998.
Ex. 1001, Abstract; col. 1, ll. 4-16.  Bestler '457 was filed April 25, 1995.[2]
Ex. 1003.

Petitioner argues that the '964 patent cannot claim the benefit of the
filing date of the '617 application because the '352 application was not
co-pending with that application (the '352 application being filed July 31,
1998, and the '617 application issuing as a patent on April 21, 1998).  *See*
Pet. 4-5; 35 U.S.C. § 120 ("An application for patent for an invention
disclosed in the manner provided by [35 U.S.C. § 112, first paragraph] in an
application previously filed in the United States . . . shall have the same
effect, as to such invention, as though filed on the date of the prior

---

[2] Bestler '457 is a continuation-in-part of an application filed January 18,
1995, but Petitioner does not rely on the filing date of that application.

Case IPR2013-00329
Patent 6,252,964 B1

application, if filed before the patenting . . . [of] the first application . . . and if it contains or is amended to contain a specific reference to the earlier filed application.").  Patent Owner does not dispute this conclusion.  We agree with Petitioner.

Instead, Patent Owner argues that co-pendency exists through the '759 application, which was pending from 1995 to 1999.  Prelim. Resp. 23.  We do not find this argument persuasive.  The '759 application issued as U.S. Patent No. 5,870,474 ("the '474 patent"), a copy of which is being entered into the record as Exhibit 3001.  The '474 patent does not claim the benefit of the filing date of the '617 application.[3]  Patent Owner, thus, cannot claim co-pendency through the '759 application.  Based on the current record, Petitioner has made a sufficient showing that the '964 patent is not entitled to the benefit of the filing date of the '617 application and, therefore, Bestler '457 is prior art under 35 U.S.C. § 102(e).[4]

### 2. Bestler '457 (Ex. 1003)

Bestler '457 is directed to a conditional access system that provides a receiver with conditional access to television programs by sending

---

[3] Indeed, on August 21, 2013, Patent Owner filed a request for a certificate of correction (Ex. 2001) to correct the '474 patent to claim the benefit of the filing date of the '617 application.  That request has not yet been acted upon by the Office.  We also note that Petitioner filed a document in the prosecution file of the '474 patent on September 14, 2013.  We express no opinion on Patent Owner's and Petitioner's filings.

[4] We need not resolve the issue of the exact effective filing date of the '964 patent at this time because April 3, 1995 (the filing date of the '617 application) is the only priority date claimed by the '964 patent prior to the filing of Bestler '457 on April 25, 1995.

Case IPR2013-00329
Patent 6,252,964 B1

authorization messages, along with video and audio data.  Ex. 1003,
Abstract.  Figure 1 of Bestler '457 is reproduced below:



Figure 1 depicts digital condition access module (DCAM) 20, within
television subscriber terminal 10, that (1) receives a Moving Picture Experts
Group (MPEG) transport bitstream from a provider, and (2) decrypts and
decompresses video and audio for display on a television.  *Id*. at col. 3, ll.
14-17; col. 7, ll. 7-29.  The bitstream includes MPEG product packets
(compressed video and audio), as well as conditional access (CA) packets.
*Id*. at col. 2, ll. 55-57.  DCAM 20 responds to the CA packets in the
bitstream by "selectively authorizing and deauthorizing subscriber terminal
10 for various television programs and other services."  *Id*. at col. 3, ll.
10-14.  DCAM 20 comprises an application specific integrated circuit
(ASIC) that performs the conditional access and decryption functions,
embedded central processing unit (CPU) 56, and one-time-programmable
memory (OTPM) 64 and random access memory (RAM) 60.  *Id*. at col. 4, ll.
36-52; Fig. 3.

Case IPR2013-00329
Patent 6,252,964 B1

DCAM 20 receives various types of CA packets.  CA initialization
packets are used to "initialize various keys used in DCAM 20," and to
initialize "subscriber authorization levels of a bit map (e.g. 256 bits) and an
authorization list stored in RAM 60." *Id*. at col. 4, ll. 59-64.  Specifically,
DCAM 20 uses a known common key and private key to decrypt CA key
sources, which are then used to decrypt "payload key sources." *Id*. at col. 4,
l. 53-col. 5, l. 31.  DCAM 20 stores the payload key sources and uses them
to decrypt future CA configuration load packets (i.e., a receiver can only
decrypt a CA configuration load packet if it has a valid payload key source
stored in memory). *Id*. at col. 5, ll. 26-67.  CA configuration load packets
are used to "refresh the authorization bit map and to delete selected
authorization codes of the authorization list stored in RAM 60." *Id*. at col. 5,
l. 49-col. 6, l. 12; col. 9, ll. 16-35.  Then, when a user requests a program,
DCAM 20 provides the decrypted video and audio to the television if it has
the appropriate authorization level stored in memory. *Id*. at col. 7, ll. 1-12.

Figure 7 of Bestler '457, reproduced below, depicts how data is
generated and provided to DCAMs:



As shown in Figure 7, network controller 302 "generates data and CA
packets for downstream transmission" to DCAM 20. *Id*. at col. 9, ll. 8-11.
The output of network controller 302 is combined with video and audio data

Case IPR2013-00329
Patent 6,252,964 B1

by inserter/modulator 304 and sent downstream to users.  *Id*. at col. 9, ll. 12-15.

### 3. Obviousness

#### Claims 1-4

Petitioner contends that claims 1-4 are unpatentable over Bestler '457 under 35 U.S.C. § 103(a).  Pet. 38-50.  For example, with respect to independent claim 1, Petitioner argues that Bestler '457 teaches a "conditional access apparatus" (DCAM 20 in Figure 1), one or more "entitlement agents" (network controller 302 alone, or in combination with inserter/modulator 304, operating on behalf of a service provider in Figure 7), and an "entitlement agent establishment apparatus in the receiver" ("any one, or a combination, of the DCAM, the embedded CPU, and/or other sub-components" in Figure 3) that establishes an entitlement agent by receiving CA packets and extracting and storing payload key sources, which allow the receiver to decode future messages that are encrypted with the payload key sources, and disestablishes an entitlement agent in response to a message.  *Id*. at 28-42, 46-47; *see* Ex. 1007 at 62-64, 66-67.  Petitioner further argues that Bestler '457 provides the "structure and function" of the claimed "entitlement specification apparatus in the receiver" ("any one, or a combination, of the DCAM, the embedded CPU, and/or other sub-components" in Figure 3) by disclosing how the DCAM receives CA configuration load packets and updates authorizations in the DCAM's memory.  Pet. 42-43; *see* Ex. 1007 at 64-65.  Petitioner also contends that Bestler '457 teaches an "access granting apparatus in the receiver" ("the DCAM alone, or in combination with the video/audio demultiplexers" that

Case IPR2013-00329
Patent 6,252,964 B1

provide decrypted video and audio to the television) that grants access to a program. Pet. 43-46; *see* Ex. 1007 at 65-66. Based on the current record and claim interpretations set forth above, Petitioner has made a threshold showing that claim 1 is unpatentable over Bestler '457. We are persuaded that Petitioner's allegations as to claims 2-4 have merit as well.

Patent Owner's sole argument as to the asserted grounds based on Bestler '457 is that the reference is not prior art. Prelim. Resp. 23, 33. As explained above, Petitioner has made a sufficient showing that Bestler '457 is prior art under 35 U.S.C. § 102(e).

Upon review of Petitioner's analysis and Mr. Young's declaration, we are persuaded that Petitioner has demonstrated a reasonable likelihood that claim 1, as well as claims 2-4, are unpatentable over Bestler '457.

*Claims 5 and 6*

Petitioner contends that claims 5 and 6 are unpatentable over Bestler '457, Bestler '080, and Citta under 35 U.S.C. § 103(a). Pet. 50-56. Upon review of Petitioner's analysis and Mr. Young's declaration, we are not persuaded that Petitioner has demonstrated a reasonable likelihood of prevailing as to claims 5 and 6.

Petitioner argues that Bestler '457, Bestler '080, and Citta together teach all of the limitations of the challenged claims, relying on the analysis of Mr. Young. *Id*. (citing Ex. 1007 ¶¶ 113-24 and Table 2). Petitioner further contends that the three references are in the "same technical field" because each "relate[s] to providing conditional access to television programs based on signal encryption or scrambling, where a conditional access system allows dynamic change of conditional access parameters

Case IPR2013-00329
Patent 6,252,964 B1

through remote messages." *Id*. at 50. Petitioner points out that Bestler '457 cites Bestler '080, and Bestler '080 references Citta in its disclosure. *Id*. Therefore, according to Petitioner, because of the "close linkages" among the references, "there is a motivation or suggestion . . . to enable a person having ordinary skill in the art to combine the teachings of these references." *Id*. at 50-51.

Similar to Petitioner's asserted obviousness ground based on Eurocrypt, Bestler '080, and Citta, *see supra* Section II.A.3, the mere fact that Bestler '457, Bestler '080, and Citta describe similar conditional access systems is not, by itself, a sufficient rationale for a person of ordinary skill in the art to have made the asserted combination, nor is the fact that the references cite each other in their disclosures. To illustrate, Petitioner relies on Bestler '080 and Citta for the limitations in claim 5 of "the entitlement agent establishment apparatus changes a first key in response to at least first and second message[s] of the further messages" and "the entitlement agent establishment apparatus using the other keys to determine whether the at least first and second messages are authentic and changing the other keys only when the at least first and second messages are authentic." Pet. 52-55; *see* Ex. 1007 at 62, 70-73. Petitioner argues that based on the alleged "close linkages" among the references, it would have been obvious to an ordinarily skilled artisan to use the teachings of Bestler '080 and Citta to "complement" the teachings of Bestler '457. Pet. 55. Petitioner, however, does not explain sufficiently why the cited secondary references would "complement" Bestler '457 or otherwise point to a sufficient reason *why* a person of ordinary skill in the art would have modified the Bestler '457 system to incorporate the key changing features of Bestler '080 and Citta.

29

Case IPR2013-00329
Patent 6,252,964 B1

Petitioner's analysis as to claim 6 is similarly deficient.  *See* Pet. 55-56; Ex.
1007 at 62, 74.

### *4. Summary*

Based on the information presented in the Petition and accompanying
declaration, we conclude that Petitioner has established a reasonable
likelihood of prevailing on its assertion that claims 1-4 are unpatentable over
Bestler '457 under 35 U.S.C. § 103(a), but has not established a reasonable
likelihood of prevailing on its assertion that claims 5 and 6 are unpatentable
over Bestler '457, Bestler '080, and Citta under 35 U.S.C. § 103(a).

### *C. Conclusion*

We conclude that Petitioner has demonstrated a reasonable likelihood
of prevailing on the following grounds of unpatentability asserted in the
Petition:

Claims 1-4 under 35 U.S.C. § 102(b) as anticipated by Eurocrypt; and

Claims 1-4 under 35 U.S.C. § 103(a) as unpatentable over Bestler
'457.

The Board, however, has not made a final determination under
35 U.S.C. § 318(a) with respect to the patentability of the challenged claims.

### III. ORDER

In consideration of the foregoing, it is hereby:

ORDERED that the Petition is granted as to claims 1-4 of the '964
patent;

Case IPR2013-00329
Patent 6,252,964 B1

FURTHER ORDERED that pursuant to 35 U.S.C. § 314(a), *inter partes* review of the '964 patent is hereby instituted commencing on the entry date of this Order, and pursuant to 35 U.S.C. § 314(c) and 37 C.F.R. § 42.4, notice is hereby given of the institution of a trial;

FURTHER ORDERED that the trial is limited to the grounds identified under the heading "Conclusion" above, and no other grounds set forth in the Petition as to claims 1-4 of the '964 patent are authorized; and

FURTHER ORDERED that an initial conference call with the Board is scheduled for 2:00 PM Eastern Time on December 18, 2013. The parties are directed to the Office Patent Trial Practice Guide, 77 Fed. Reg. 48756, 48765-66 (Aug. 14, 2012), for guidance in preparing for the initial conference call, and should come prepared to discuss any proposed changes to the Scheduling Order entered herewith and any motions the parties anticipate filing during the trial.

Case IPR2013-00329
Patent 6,252,964 B1

PETITIONER:

Bing Ai
Nicholas T. Bauz
Amy E. Simpson
PERKINS COIE LLP
ai@perkinscoie.com
opentv-cisco-ipr@perkinscoie.com


PATENT OWNER:

David L. McCombs
Theodore M. Foster
Jamie McDole
HAYNES AND BOONE, LLP
David.mccombs.ipr@haynesboone.com
theo.foster@haynesboone.com
jamie.mcdole@haynesboone.com